UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JASON LOPEZ, | |
| Plaintiff, | No. 14-CV-2441 (KMK) |
| v. | OPINION AND ORDER |
| SERGEANT CIPOLINI and CORRECTION OFFICER BURGUESS, | |
| Defendants. | |

Appearances:

Jason Lopez
New York, NY
*Pro Se Plaintiff*

Maria Barous Hartofilis, Esq.
Assistant Attorney General of the State of New York
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

Pro se Plaintiff Jason Lopez ("Plaintiff") filed the instant Amended Complaint pursuant to 42 U.S.C. § 1983 against Sergeant Cipolini ("Cipolini") and Correction Officer Burguess ("Burguess") (collectively, "Defendants"). Plaintiff alleges that Cipolini violated Plaintiff's Free Exercise Clause rights under the First Amendment, the Religious Land and Institutionalized Person Act ("RLUIPA"), 42 U.S.C. § 2000cc et seq., and the Fourteenth Amendment Equal Protection Clause when he prohibited Plaintiff from attending religious services on two different occasions. (Am. Compl. ¶ II.D (Dkt. No. 33).) Plaintiff also alleges that Cipolini harassed Plaintiff based on this conduct. (*See* Letter from Plaintiff to Court (Sept. 17, 2014) ("Pl.'s Sept. 17, 2014 Letter"), at unnumbered 2 (Dkt. No. 24).) Plaintiff alleges that Burguess violated her

Eighth Amendment rights by verbally harassing Plaintiff during recreation, (Am. Compl. ¶ II.D), and, further, violated Title VII and the Equal Protection Clause when Burguess fired Plaintiff from her work position in the prison, (Pl.'s Sept. 17 Letter, at unnumbered 2).  Before the Court is Defendants' Motion to Dismiss the Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6).  (*See* Mot. To Dismiss ("Mot.") (Dkt. No. 38).)[1]  Defendants claim that Plaintiff's Action is barred for failure to exhaust available administrative remedies, pursuant to the Prison Litigation Reform Act ("PLRA"), 42. U.S.C. § 1997e(a), and, alternatively, that Plaintiff's claims cannot survive on the merits.  (*Id.*)  For the following reasons, Defendants' Motion is granted in part and denied in part.

## I.  Background

### A.  Factual Background

The following facts are drawn from Plaintiff's Amended Complaint, (Dkt. No. 33), and papers submitted in response to Defendants' request for a pre-motion conference, (Dkt. No. 22), and are taken as true for the purpose of resolving the instant Motion.  Plaintiff is a male-to-female transgender individual,[2] and was housed in Downstate Correctional Facility, an

---

[1] Plaintiff also filed a Motion for an Order granting compensation for trauma and mental anguish in the amount of one million dollars on November 17, 2014.  (Dkt. No. 32.)  Because Plaintiff subsequently filed an Amended Complaint, (Dkt. No. 33), and no discovery in this Action has occurred, this Motion is denied as untimely.

[2] Neither Plaintiff's Amended Complaint nor her opposition papers clearly state that Plaintiff is a male-to-female transgender individual.  There is, however, reference to Plaintiff's "sexuality" in her opposition papers, as well as a letter appended to her Amended Complaint from the Prisoner Legal Services of New York that refers to Plaintiff as a transgender individual. (Am. Compl. Ex. B.)  Defendants do not contest that Plaintiff is a transgender individual and indeed rely on this fact in moving to dismiss.

all-male prison, during the time of the alleged events.[3]  (Am. Compl. Ex. B (Dkt. No. 33).)

On February 9, 2014, at approximately 8:30 a.m., Cipolini "told [Plaintiff] in[] front of the inmates going to religious services [that] [Plaintiff] could not attend because of [her] [h]air and [her] sexuality."  (Pl.'s Sept. 17, 2014 Letter, at unnumbered 2; *see also* Am. Compl. ¶¶ II.C–D.)  On February 16, 2014, at approximately the same time, "[w]hile going to Catholic services[,] . . . Cipolini had [Plaintiff] escorted out of [the] services[,] stating [that she was] not authorized to go to any relig[i]ous service."  (Am. Compl. ¶¶ II.C–D.)  On March 28, 2014, at approximately 1:30 p.m., Plaintiff "was setting up for gallery recreation" when Burguess "asked [Plaintiff] to lock in because [Burguess] needed two men to work."  (*Id.*)  Other inmates witnessed the incident.  (*Id.*)  Burguess also "fired [Plaintiff] [from] [her] [two-and-a-half] month position," stating that Downstate Correctional Facility was a "[m]en's facility."  (Pl.'s Sept. 17, 2014 Letter, at unnumbered 2.)[4]  As a result of Defendants' conduct, Plaintiff suffered mental anguish and went to see the mental health doctor at the prison.  (Am. Compl. ¶ III.)  Plaintiff is asking for one million dollars to compensate her for her mental anguish and requests that the Court acknowledge that Defendants discriminated against her and publicly humiliated her.  (*Id.*)

With respect to Cipolini, Plaintiff "wrote to [her] lawyer and stated what had happen[ed]."  (*Id.* ¶ IV.E.1.)  "[Plaintiff's lawyer,] in t[u]rn[,] wrote to the [s]uperintendent[,] but it did not help because [Plaintiff] was [] [f]urther harassed and [d]iscriminated [against] instead."

---

[3] Plaintiff left Downstate Correctional Facility on April 28, 2014, (Letter from Plaintiff to Court (Oct. 6, 2014), at unnumbered 1 (Dkt. No. 26)), has since been released from prison, and lives in New York City, (Pro Se Mem. re: Change of Address (Dkt. No. 30)).

[4] Plaintiff later states that Burguess only "attempt[ed] to fire [her] from [her] porter position."  (Letter from Plaintiff to Court (Oct. 29, 2014) ("Pl.'s Oct. 29, 2014 Letter"), at unnumbered 1 (Dkt. No. 29).)  For purpose of resolving the instant Motion, the Court will take as true the allegation that Plaintiff was fired.

(*Id.* ¶ IV.F.2.)  No grievance against Cipolini was filed.  (*Id.*)[5]  With respect to Burguess, Plaintiff filed a grievance about the incident on March 28, 2014, and after receiving an adverse response, she appealed the decision on April 23, 2014.  (*Id.* ¶¶ IV.E.1, IV.E.3; (Letter from Plaintiff to Court (Oct. 29, 2014) ("Pl.'s Oct. 29, 2014 Letter"), at unnumbered 1 (Dkt. No. 29).)  Plaintiff pleads that she "appealed [her] appeal [but] did not get [an] answer[] [through] the proper grievance prot[o]col[.]  [The Central Office Review Committee ("CORC")] had 45 days to give [her] [a] decision [but] it took them 161 days to get [her] decision back."  (*Id.* ¶ IV.E.3.)  Plaintiff subsequently provided the Court with a copy of her adverse appeal decision from the CORC, which indicates the "date filed" was April 14, 2014 and the CORC appeal was decided on September 3, 2014.  (Pl.'s Oct. 29, 2014 Letter, at unnumbered 2.)[6]

---

[5] The Court notes that in the grievance appeal decision issued by the Central Office Review Committee ("CORC") to Plaintiff, sent to the Court by Plaintiff in her October 6, 2014 Letter, the report mentions two separate events, one involving a "CO B" on March 28, 2014 and one involving a "Sgt. S" on April 7, 2014.  (Pl.'s Oct. 6, 2014 Letter, at unnumbered 2.)  This document is consistent with the charge that Plaintiff alleges against Burguess.  To the extent it could be inferred that "Sgt. S" is "Sgt. Cipolini," the Court notes that any suggestion that the CORC considered a grievance against Cipolini is inconsistent with Plaintiff's own assertion that "[she] did not grieve" the [first] two inc[i]dents," on February 9, 2014 and February 16, 2014, involving Cipolini.  (Am. Compl. ¶ IV.F.2.)  Moreover, the document notes that the incident involving "Sgt. S" took place in April, rather than in February.  As such, the Court cannot infer from the CORC decision that a grievance against Cipolini was considered by, or submitted to, the CORC because it is inconsistent with the allegations in the Amended Complaint.  *See Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. 2013) (explaining that in deciding a motion to dismiss, a court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint." (internal quotation marks omitted)).

[6] There is no indication on the CORC decision if the "date filed" refers to the date the original grievance was filed, or the date the appeal was filed.  This difference is immaterial for the purpose of resolving the instant Motion.

B. Procedural Background

Plaintiff filed the original Complaint on April 7, 2014 against Defendants Cipolini, Burguess, and the New York State Department of Corrections and Community Supervision ("DOCCS").  (Dkt. No. 2.)  The Court granted Plaintiff's request to proceed in forma pauperis on May 14, 2014.  (Dkt. No. 7.)  The Court issued an Order dismissing Plaintiff's claims against the DOCCS on May 20, 2014.  (Dkt. No. 9.)  On June 11, 2014 the Court received a letter from Plaintiff dated May 30, 2014 requesting $1.2 million in damages for the mental anguish that she suffered when Defendants discriminated against and humiliated Plaintiff based on her appearance and sexual orientation.  (Dkt. No. 11.)  The Court issued an Order on June 16, 2014 allowing Plaintiff more time to amend her Complaint, given the further information Plaintiff submitted in her May 30, 2014 Letter.  (Dkt. No. 16.)  The Court did not receive an amended complaint from Plaintiff pursuant to the June 16, 2014 Order.  Defendants submitted a letter for a pre-motion conference on September 12, 2014, indicating the grounds on which Defendants would move to dismiss.  (Dkt. No. 22.)  Thereafter, Plaintiff submitted numerous papers in response to Defendants' September 12, 2014 Letter, including a letter explaining the steps that Plaintiff took to grieve her claim against Burguess.  (Dkt. Nos. 24–26, and 29.)  On November 12, 2014, based on the information that Plaintiff submitted in her October 6, 2014 Letter and the CORC's decision appended thereto, the Court issued an Order directing Plaintiff to show cause as to why her Complaint should not be dismissed for failure to exhaust the relevant administrative remedies.  (Dkt. No. 31.)  In response, Plaintiff filed a Motion for Compensation, (Dkt. No. 32), and an Amended Complaint on November 17, 2014, (Dkt. No. 33).  Pursuant to a Scheduling Order issued by the Court on December 17, 2014, (Dkt. No. 37), Defendants filed a

Motion to Dismiss and accompanying papers on January 30, 2015, (Dkt. Nos. 38–41).  Plaintiff

did not submit papers in opposition to the Motion.[7]

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual

allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his

[or her] entitle[ment] to relief requires more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 555 (2007) (second alteration in original) (internal quotation marks omitted).  Instead, the

Court has emphasized that "[f]actual allegations must be enough to raise a right to relief above

the speculative level," *id.*, and that "once a claim has been stated adequately, it may be supported

by showing any set of facts consistent with the allegations in the complaint," *id.* at 563.  A

plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face."  *Id.*

at 570.  But if a plaintiff has "not nudged [his or her] claims across the line from conceivable to

plausible, the[] complaint must be dismissed."  *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679

(2009) ("Determining whether a complaint states a plausible claim for relief will . . . be a

context-specific task that requires the reviewing court to draw on its judicial experience and

common sense.  But where the well-pleaded facts do not permit the court to infer more than the

mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the

pleader is entitled to relief.'" (alteration in original) (citation omitted) (quoting Fed. R. Civ. P.

8(a)(2))).

---

[7] The Court also notes that a status conference for this case was scheduled on September 9, 2015.  (*See* Dkt. No. 44.)  Although the Calendar Notice was mailed to Plaintiff's address, as indicated on the docket, Plaintiff failed to appear.  (*See* Docket Minute Entry Sept. 9, 2015.)

In considering Defendants' Motion to Dismiss, the Court is required to consider as true the factual allegations contained in the Amended Complaint. *See Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008) ("We review de novo a district court's dismissal of a complaint pursuant to Rule 12(b)(6), accepting all factual allegations in the complaint and drawing all reasonable inferences in the plaintiff's favor." (italics and internal quotation marks omitted)); *Gonzalez v. Caballero*, 572 F. Supp. 2d 463, 466 (S.D.N.Y. 2008) (same). Moreover, a pro se litigant's submissions "are held to less stringent standards than [those] drafted by lawyers. Courts liberally construe pleadings and briefs submitted by pro se litigants, reading such submissions to raise the strongest arguments they suggest." *Johnson v. Schriro*, No. 12-CV-7239, 2013 WL 5718474, at *2 (S.D.N.Y. Oct. 15, 2013) (internal quotation marks and citations omitted).

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted). In deciding a motion to dismiss a pro se complaint, however, it is appropriate to consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. 2013) (internal quotation marks omitted), including, "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. 2010), "allegations contained in plaintiff's memorandum of law, at least where those allegations are consistent with the allegations in the complaints[,]" *Donehue v. U.S. Dep't of Justice*, 751 F. Supp. 45, 49 (S.D.N.Y. 1990), information provided in affidavits,

*Washington v. James*, 782 F.2d 1134, 1139 (2d Cir. 1986) (considering a pro se plaintiff's submitted memorandums and affidavits), and statements by the plaintiff "submitted in response to [a] defendant's request for a pre-motion conference," *Jones v. Fed. Bureau of Prisons*, No. 11-CV-4733, 2013 WL 5300721, at *2 (E.D.N.Y. Sept. 19, 2013); *see also Rodriguez v. Rodriguez*, No. 10-CV-891, 2013 WL 4779639, at *1 (S.D.N.Y. 2013) ("Although the Court is typically confined to the allegations contained within the four corners of the complaint, when analyzing the sufficiency of a pro se pleading, a court may consider factual allegations contained in a pro se litigant's opposition papers and other court filings." (internal citations and quotation marks omitted)). Finally, it is worth noting that the "failure to oppose [Defendants'] [M]otion [T]o [D]ismiss does not, by itself, require the dismissal of [Plaintiff's] claims." *Leach v. City of New York*, No. 12-CV-2141, 2013 WL 1683668, at *2 (S.D.N.Y. Apr. 17, 2013).  Rather, even though "a party is of course to be given a reasonable opportunity to respond to an opponent's motion, the sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law." *McCall v. Pataki*, 232 F.3d 321, 322–23 (2d Cir. 2000).

### B. Exhaustion

#### 1.  Applicable Law

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under [§] 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The exhaustion requirement applies to all personal incidents while in prison, *Porter v. Nussle*, 534 U.S. 516, 532 (2007) (holding exhaustion is required for "all inmate suits about prison life, whether they involve general circumstances or particular episodes"); *see also*

*Johnson v. Killian*, 680 F.3d 234, 238 (2d Cir. 2012) (same), and includes actions for monetary damages despite the fact that monetary damages are not available as an administrative remedy, *Booth v. Churner*, 532 U.S. 731, 741 (2001) (holding exhaustion is required "regardless of the relief offered through administrative procedures").  Moreover, the PLRA mandates "'proper exhaustion'—that is, 'using all steps that the agency holds out, and doing so properly,' . . . [which] entails . . . 'completing the administrative review process in accordance with the applicable procedural rules.'"  *Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (quoting *Woodford v. Ngo*, 548 U.S. 81, 88, 90 (2006)).

The Second Circuit has made clear that "administrative exhaustion is not a jurisdictional predicate," but rather "failure to exhaust is an affirmative defense."  *Giano v. Goord*, 380 F.3d 670, 675 (2d Cir. 2004) (citation omitted).  Accordingly, "defendants bear the burden of proof[,] and prisoner plaintiffs need not plead exhaustion with particularity."  *McCoy v. Goord*, 255 F. Supp. 2d 233, 248 (S.D.N.Y. 2003); *see also Miller v. Bailey*, No. 05-CV-5493, 2008 WL 1787692, at *3 (E.D.N.Y. Apr. 17, 2008) (explaining that the exhaustion requirement "must be pleaded and proved by a defendant" (citing *Jones v. Bock*, 549 U.S. 199, 216 (2007))).  Further, "'[a] court may not dismiss for failure to exhaust administrative remedies unless it determines that such remedies are available.'"  *Rossi v. Fishcer*, No. 13-CV-3167, 2015 WL 769551, at *4 (S.D.N.Y. Feb. 24, 2015) (quoting *Abney v. McGinnis*, 380 F.3d 663, 668 (2d Cir. 2004)).  The Second Circuit has recently made clear that "[w]hether an administrative remedy was available to a prisoner in a particular prison or prison system is ultimately a question of law," and "defendants bear the initial burden of establishing, by pointing to legally sufficient sources such as statutes, regulations, or grievance procedures, that a grievance process exists and applies to the underlying dispute."  *Hubbs v. Suffolk Cty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015)

(citation, alteration, and internal quotation marks omitted); *see also Perez v. City of New York*, No. 14-CV-7502, 2015 WL 3652511, at *2 (S.D.N.Y. June 11, 2015) (same).

Finally, the Second Circuit has recognized certain exceptions to the exhaustion requirement that apply when "(1) administrative remedies are not available to the prisoner; (2) defendants have either waived the defense . . . or acted in such a[] way as to estop them from raising the defense; or (3) special circumstances, such as a reasonable misunderstanding of the grievance procedures, justify the prisoner's failure to comply with the exhaustion requirement." *Ruggiero v. County of Orange*, 467 F.3d 170, 175 (2d Cir. 2006). "[T]he resolution of the exhaustion issue does not necessarily fit exactly into any of these three categories, and a particular fact pattern may implicate one or a combination of these factors." *Pagan v. Brown*, No. 08-CV-724, 2009 WL 2581572, at *5 (N.D.N.Y. Aug. 19, 2009) (citing *Giano*, 380 F.3d at 677 n.6). Therefore, a motion to dismiss pursuant to Rule 12(b)(6) for failure to exhaust should be granted only if "nonexhaustion is clear from the face of the complaint, and none of the exceptions outlined by the Second Circuit are germane." *Lovick v. Schriro*, No. 12-CV-7419, 2014 WL 3778184, at *4 (S.D.N.Y. July 25, 2014) (alterations and internal quotation marks omitted); *see also Lee v. O'Harer*, No. 13-CV-1022, 2014 WL 7343997, at *3 (N.D.N.Y. Dec. 23, 2014) ("Dismissal under Rule 12(b)(6) for failure to exhaust is appropriate if such failure is evidenced on the face of the complaint and incorporated documents."); *Sloane v. Mazzuca*, No. 04-CV-8266, 2006 WL 3096031, at *4 (S.D.N.Y. Oct. 31, 2006) ("[B]y characterizing non-exhaustion as an affirmative defense, the Second Circuit suggests that the issue of exhaustion is generally not amenable to resolution by way of a motion to dismiss." (internal quotation marks omitted)).

2.  Application

Defendants move to dismiss the Amended Complaint on exhaustion grounds as to each Defendant.  Accordingly, the Court addresses whether it is clear from the face of the Amended Complaint and the documents that Plaintiff submitted in connection with the instant Motion whether the claims should be dismissed because of Plaintiff's failure to exhaust.

a.  Burguess

To begin, Defendants "point[] to legally sufficient sources . . . [to show] that a grievance process exists and applies to the underlying dispute" involving Burguess.  *Hubbs*, 788 F.3d at 59. In particular, Defendants point out that prisoners in the DOCCS's facilities, like Plaintiff, must exhaust all three levels of the applicable grievance procedure, (Defs.' Mem. of Law in Supp. of Defs.' Mot. To Dismiss the Am. Compl. ("Defs.' Mem.") 6 (Dkt. No. 39)), which requires that "first, the prisoner files a grievance with the Inmate Grievance Resolution Committee ('IGRC'). Second, the prisoner may appeal an adverse IGRC decision to the facility superintendent, and third, the prisoner may appeal an adverse decision by the superintendent to [the CORC]," *Mateo v. Corebine*, No. 09-CV-4811, 2010 WL 3629515, at *3 (S.D.N.Y. 2010); *accord* 7 N.Y. Comp. Codes R. & Regs. § 701.5(a)(2).  It is clear from the face of the Amended Complaint and the documents that Plaintiff submits in response to Defendants' pre-motion letter that this grievance procedure was available to Plaintiff concerning her claims against Burguess.  Indeed, Plaintiff filed a grievance regarding these claims, appealed it, and received a decision from the CORC. (*See generally* Pl.'s Oct. 6, 2014 Letter.)  *See McCoy*, 255 F. Supp. 2d at 254 ("[T]he inmate grievance program was 'available' to [the plaintiff] . . . for he filed a number of grievances concerning some of the misconduct he alleges."); *Banks v. Stewart*, No. 08-CV-7452, 2010 WL 2697075, at *6 (S.D.N.Y. 2010) (holding that the plaintiff could not contest the "availability" of

administrative remedies where he did not claim he was unaware of the grievance process, and he had partially grieved the incident).

It is also clear from Plaintiff's filings that Plaintiff failed to exhaust her administrative remedies before filing suit in federal court. Specifically, Plaintiff's claims against Burguess arise from events that took place on March 28, 2014. (*See* Am. Compl. II.D.) That same day, Plaintiff filed a grievance regarding Burguess's conduct. (Am. Compl. ¶ IV.E.1; *see also* Pl.'s Oct. 6, 2014 Letter, at unnumbered 1.) Plaintiff then filed this Action on April 7, 2014, 10 days after the day that the alleged events occurred and she filed the relevant grievance. (*See* Compl. (Dkt. No. 2).) The regulations applicable to the grievance procedure in New York facilities provide that the first step of the grievance process should be completed within 16 calendar days after receipt of the grievance. *See* N.Y. Comp. Codes R. & Regs § 701.5(b). If an inmate appeals an adverse decision to the Superintendent, the Superintendent must generally decide the issue within 20 calendar days from the time the appeal was received. *Id.* § 701.5(c). Finally, the CORC must decide an appeal within 30 calendar days from the date that such an appeal is filed. *Id.* § 701.5(d). In light of this procedure and based on the facts alleged in the Amended Complaint, it is implausible that Plaintiff was able to exhaust her administrative remedies within 10 days. *See Perez*, 2015 WL 3652511, at *3 (noting that "[t]he timing of the [c]omplaint . . . show[ed] that the grievance process could not have been completed when [the plaintiff] commenced th[e] action"); *Price v. City of New York*, No. 11-CV-6170, 2012 WL 3798227, at *3 (S.D.N.Y. Aug. 30, 2012) (granting the defendant's motion to dismiss on exhaustion grounds where "given the timelines for the grievance procedure outlined in the [applicable] regulations, it would have been impossible for [the plaintiff to have fully pursued his grievance through all of the steps of the grievance procedure] in the 21 days between the alleged

incident and the filing of his initial complaint"). Indeed, in her October 6, 2014 Letter, Plaintiff states that she appealed the grievance on April 23, 2014, which is after the date that she filed her initial Complaint in this case. (Pl.'s Oct. 6, 2014 Letter, at unnumbered 1.) It is clear, therefore, based on the materials Plaintiff submitted that, despite the fact that administrative remedies were available to her concerning her claims against Burguess, she failed to exhaust her administrative remedies before initiating this Action. *See Harris*, 2013 WL 3816590, at *7 (granting the defendant's motion to dismiss on exhaustion issues, in part, because the time limit for the superintendent to render a decision had yet to lapse when the plaintiff filed his federal action, and the plaintiff, therefore, could not "argue he was denied an opportunity to exhaust his administrative remedies").

A plaintiff must exhaust his administrative remedies *before* filing his initial complaint in federal court. Indeed, "[w]hen a prisoner does not properly exhaust his [or her] administrative remedies before filing suit, the action *must* be dismissed." *Mateo v. Alexander*, No. 08-CV-8797, 2010 WL 431718, at *3 (S.D.N.Y. Feb. 9, 2010); *see also Harris v. Gunsett*, No. 12-CV-3578, 2013 WL 3816590, at *6 (S.D.N.Y. July 22, 2013) (same). "This is so even if the claim has since been exhausted." *Mateo v. Ercole*, No. 08-CV-10450, 2010 WL 3629520, at *3 (S.D.N.Y. Sept. 17, 2010) (collecting cases). In other words, "subsequent exhaustion after suit is filed . . . is insufficient," *Neal v. Goord*, 267 F.3d 116, 122 (2d Cir. 2001), *overruled on other grounds by Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see also Harris*, 2013 WL 3816590, at *6 (same), even where, as here, "'it might seem more efficient simply to proceed with the lawsuit rather than dismiss it only to see it immediately re-filed,'" *Harris*, 2013 WL 381590, at *6 (quoting *Alexander*, 2010 WL 431718, at *3) (brackets omitted).

On November 12, 2014, after the Court received Plaintiff's October 6, 2014 Letter with the attached grievance from the CORC, the Court issued an Order stating that "[i]n light of the fact that CORC's decision in this matter was not issued until September 3, 2014, and therefore that Plaintiff did not exhaust [her] administrative remedies prior to filing the instant Complaint, Plaintiff is ordered to show cause . . . as to why an exception to exhaustion should apply here, or why [her] Complaint should not otherwise be dismissed without prejudice so that [s]he may reinstitute [her] suit." (Order 2 (Dkt. No. 31).) Plaintiff did not directly respond to the Order to Show Cause, but rather filed the Amended Complaint in which she explained that she "appealed [her] appeal [but] did not get [an] answer[] [through] the proper grievance prot[o]col[.] They had 45 days to give [Plaintiff] a decision [but] it took them 161 days to get [her] decision back." (Am. Compl. ¶ IV.E.3.) The Court construes this statement as an allegation that an administrative remedy was not available to Plaintiff because of the CORC's delay.

The Court notes that "[a] number of federal circuit courts have held that a failure to respond to a grievance within the time limit prescribed by the prison grievance process renders an administrative remedy unavailable for the purposes of exhaustion[,]" *Rossi*, 2015 WL 769551, at *4 (collecting cases), and that the Second Circuit has cited these decisions favorably, *see Hemphill v. New York*, 380 F.3d 680, 686 n.6 (2d Cir. 2004) (explaining that if the plaintiff had "wrote in a timely fashion to the Superintendent pursuant to a possibly valid interpretation of DO[C]CS grievance procedures, there might be a question as to the availability of remedies, since [the plaintiff] received no response to his letter, and there is no indication in the record that his grievance was ever recorded, as required by DO[C]CS regulations" but "express[ing] no view on whether [the plaintiff's] allegations can support such a theory"). The Court also notes that "[j]udges in [the Southern District of New York] . . . have also agreed with the proposition that

administrative remedies may be deemed unavailable when the prison fails to timely respond to a grievance," *Rossi*, 2015 WL 769551, at *5 (collecting cases). Accordingly, if this were a case where Plaintiff filed the instant Action *after* the Superintendent or the CORC failed to render a decision within the time frame mandated by the applicable regulations, it may be appropriate to decide that administrative remedies were not available to Plaintiff, and therefore, to deny Defendants' Motion on exhaustion grounds as to the claims against Burguess.

Here, however, at the time that Plaintiff filed her initial complaint, administrative remedies were available to her based on her pleadings and filings. As noted, Plaintiff filed her initial complaint on April 7, 2014, (Dkt. No. 2), which was *before* she filed an appeal of her grievance on April 23, 2014, as Plaintiff contends in her letter. (Pl.'s October 6, 2014 Letter, at unnumbered 1). Accordingly, at the time that Plaintiff filed her Complaint, Plaintiff had yet to, at the very least, complete the third step in exhausting her administrative remedies, namely appealing the adverse grievance to the CORC. Furthermore, failing to file an appeal, even when a plaintiff does not receive a response from the IGRP or the Superintendent, does not excuse exhaustion. *See Garvin v. Rivera*, No. 13-CV-7054, 2015 WL 876464, at *4 (S.D.N.Y. Feb. 28, 2015) ("Courts in [the Second Circuit] have consistently held that the failure to take an available administrative appeal, even when the initial grievance receives no response, constitutes a failure to exhaust available administrative remedies.")

In sum, while the Court heeds that nonexhaustion is an affirmative defense and, therefore, that "the issue of exhaustion is generally not amenable to resolution by way of a motion to dismiss," *Sloane*, 2006 WL 3096031, at *4, here, dismissal based on exhaustion grounds is appropriate. Nonexhaustion is clear from the face of the Amended Complaint and the documents that Plaintiff has submitted. In an abundance of caution, the Court provided Plaintiff an

15

opportunity to explain why she should not re-file her claim based on the date of the grievance she received from the CORC and submitted to the Court.  In light of Plaintiff's subsequent explanation for her failure to exhaust, it is clear that "none of the exceptions outlined by the Second Circuit [to excuse the failure to exhaust] are germane." *Lovick*, 2014 WL 3778184, at *4 (alterations and internal quotation marks omitted).  In particular, Plaintiff complains of the CORC's delay.  Although delay may make administrative remedies unavailable, here, at the time Plaintiff filed her Complaint—ten days after the alleged events occurred and she filed her grievance—she had not yet filed an appeal to the CORC.[8]  Finally, the Court emphasizes that "a prisoner's failure to exhaust administrative remedies is merely a procedural flaw that can be cured simply by exhausting those remedies and reinstituting suit."  *Wagnoon v. Johnson*, No. 02-CV-10282, 2004 WL 583764, at *3 (S.D.N.Y. 2004) (dismissing the plaintiff's case without prejudice so that he could reinstitute suit).  Therefore, Plaintiff's claims against Burguess are dismissed, without prejudice, for failure to exhaust her administrative remedies so that she may properly re-institute her suit.  *See Berry v. Kerik*, 366 F.3d 85, 87 (2d. Cir. 2004) (holding that, where a plaintiff has failed to exhaust administrative remedies, dismissal without prejudice is proper because plaintiff can simply re-plead after exhaustion); *McCoy*, 255 F. Supp. at 252 ("A dismissal for failure to exhaust is usually without prejudice . . . because failure to exhaust is ordinarily a 'temporary, curable, procedural flaw.'" (quoting *Snider v. Melindez*, 199 F.3d 108, 111 (2d Cir. 1999) (internal citations omitted))).

---

[8] The Court notes it is also very unlikely, based on the time line described above, that Plaintiff filed an appeal with the Superintendent and/or received a response before filing this case.

### b.  Cipolini

In her Amended Complaint, Plaintiff alleges that she did not file a grievance against Cipolini, but instead that she wrote to her lawyer, who in turn wrote to the Superintendent.  (Am. Compl. ¶ IV.F.2.)  Plaintiff attaches two letters to her Amended Complaint.  One letter, dated March 11, 2014, is from Stephanie Kozic, a legal intern at the Legal Aid Society, to Plaintiff, explaining, among other things, that she enclosed "a copy of the letter sent to the Superintendent on [Plaintiff's] behalf."  (*Id.* Ex. A.)  The second letter, dated March 14, 2014, is from Mik Kinkead, an attorney at the Prisoners' Legal Services of New York, stating that "it is very distressing that [Plaintiff is] being harassed and possibly even denied [her] religious rights because of who [Plaintiff] is[,]" offering Plaintiff assistance, enclosing "several releases for [Plaintiff] to fill out," and providing various resources.  (*Id.* Ex. B.)

The Court notes that in general "[m]erely [a]lert[ing] . . . prison officials as to the nature of the wrong for which redress is sought does not constitute proper exhaustion."  *Macias v. Zenk*, 495 F.3d 37, 44 (2d Cir. 2007) (internal citations and quotation marks omitted); *see also Perez*, 2015 WL 3652511, at *4 (explaining that the "[p]laintiff's allegation that he advised others of his [or her] grievance does not excuse his failure to exhaust the administrative process specified in the IGRP").  "Regardless of whether . . . informal complaints put the prison officials on notice of his grievance '*in a substantive sense*,' . . . to satisfy the PLRA, a prisoner must also *procedurally* exhaust his [or her] available remedies."  *Macias*, 495 F.3d at 43 (quoting *Johnson v. Testman*, 380 F.3d 691, 697–98 (2d. Cir. 2004)).  Substantive notice alone is insufficient because "[t]he benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance," and "[t]he prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules."  *Woodford*,

548 U.S. at 95.  Thus, for example, "[c]ourts have repeatedly held that complaint letters to the . . . facility [s]uperintendent do not satisfy the PLRA's exhaustion requirement."  *Nelson v. Rodas,* No. 01-CV-7887, 2002 WL 31075804, at *3 (S.D.N.Y. Sept. 17, 2002) (collecting cases); *see also Muhammad v. Pico*, No. 02-CV-1052, 2003 WL 21792158, at *8 (S.D.N.Y. Aug. 5, 2003) (same).  Moreover, writing to the superintendent does not "preclude submission of a formal grievance," *Amador*, 655 F.3d at 97, nor does it preclude the requirement that an inmate must go through the appeal process if the superintendent fails to act, *McNair v. Sgt. Jones*, No. 01-CV-3253, 2002 WL 31082948, at *8 (S.D.N.Y. Sept. 18, 2002) (noting that the failure to follow the appeal process alone "means that [a plaintiff] has not exhausted his administrative remedies"); *accord* 7 N.Y. Comp. Codes R. & Regs. §§ 701.5(a), 701.8(g).  Even assuming, then, that Plaintiff's lawyer contacted the Superintendent regarding the claims Plaintiff alleges here against Cipolini, this would not, without more, excuse exhaustion.

Furthermore, Plaintiff does not contend that Defendants' actions or other special circumstances prevented her from filing a grievance as to her claims against Cipolini.  *See Perez*, 2015 WL 3652511, at *4 (explaining that the "[p]laintiff ha[d] not pleaded any additional facts that would excuse his failure to exhaust administrative remedies"); *cf. Macias*, 495 F.3d at 44 (remanding the case after the plaintiff amended his complaint to allege that prison officials' threats prevented him from filing a grievance); *Gonzalez v. Officer in Charge of Barber Shop on Duty on May 13, 1999*, No. 99-CV-3455, 2000 WL 274184, at *3 (S.D.N.Y. Mar. 13, 2000) (denying a motion to dismiss for failure to exhaust where the plaintiff alleged his efforts to file a grievance were "frustrated" by prison officials).  Nevertheless, it is not clear from the face of the Amended Complaint and the materials that Plaintiff attaches that there are no legitimate reasons to excuse exhaustion of Plaintiff's claims against Cipolini.  Rather, exceptions to the exhaustion

requirement, such as the possibility that Plaintiff reasonably misunderstood the grievance

procedure, *see Ruggiero*, 467 F.3d at 175, may be applicable here.  As noted above, "a prisoner

plaintiff need not plead exhaustion with particularity."  *McCoy*, 255 F. Supp. 2d at 248.

Therefore, the fact that Plaintiff's Amended Complaint admits that she did not file a grievance

against Cipolini does not, without more, warrant dismissing her claims against Cipolini at this

stage.  The Court thus turns to the merits of Plaintiff's claims against Cipolini.

C.  Merits of Plaintiff's Claims Against Cipolini

Plaintiff alleges that on February 9, 2014, Cipolini told her she "could not attend

Protestant services because of [her] hair" and "sexuality," (Am. Compl. ¶ II.D; Pl.'s Sept. 17,

2014 Letter, at unnumbered 2), and "[w]hile going to Catholic services [on February 16,

2014,] . . . Cipolini had [Plaintiff] escorted out of services[,] stating [that she was] not authorized

to go to any religious service," (Am. Compl. ¶ II.D).  Plaintiff characterizes Cipolini's behavior

as "harassment and discrimination."  (Pl.'s Sept. 17, 2014 Letter, at unnumbered 2.)  The Court

construes these allegations as stating a violation of the Free Exercise Clause of the First

Amendment, a claim under RILUPA, a claim of harassment in violation of the Eighth

Amendment, and a claim of gender discrimination in violation of the Equal Protection Clause of

the Fourteenth Amendment.

1.  Religious Liberty Claims

a.  Applicable Law

"Prisoners have long been understood to retain some measure of the constitutional

protection afforded by the First Amendment's Free Exercise Clause," *Ford v. McGinnis*, 352

F.3d 582, 588 (2d Cir. 2003), which includes the right to participate in religious services, *see*

*Salahuddin v. Coughlin*, 993 F.2d 306, 308 (2d Cir. 1993).  A prisoner's First Amendment rights,

however, are "[b]alanced against . . . the interests of prison officials charged with complex duties

arising from the administration of the penal system." *Ford*, 352 F.3d at 588 (internal quotation

marks omitted); *see also Weathers v. Rock*, No. 12-CV-1301, 2014 WL 4810309, at *4

(N.D.N.Y. Sept. 23, 2014) (explaining that the right of inmates to freely exercise a chosen

religion "is not limitless, and may be subject to restrictions relating to legitimate penological

concerns").   Accordingly, a prisoner's free exercise claims are "judged under a reasonableness

test less restrictive than ordinarily applied to alleged infringements of fundamental constitutional

rights."  *Ford*, 352 F.3d at 588 (internal quotation marks omitted).

"To be entitled to protection under the free exercise clause of the First Amendment, a

prisoner must make a threshold showing that the disputed conduct substantially burdened his [or

her] sincerely held religious beliefs."  *Washington v. Chaboty*, No. 09-CV-9199, 2015 WL

1439348, at *9 (S.D.N.Y. Mar. 30, 2015) (internal quotation marks omitted); *see also

Salahuddin v. Goord*, 467 F.3d 263, 274–45 (2d Cir. 2006) ("The prisoner must show at the

threshold that the disputed conduct substantially burdens his sincerely held religious beliefs.");

*Shapiro v. Cmty. First Servs., Inc.*, No. 11-CV-4061, 2014 WL 1276479, at *10 (E.D.N.Y. Mar.

27, 2014) ("At the motion to dismiss stage, a complaint must assert sufficient allegations

necessary to establish that plaintiff's claim is based upon a sincerely held religious belief."

(internal quotation marks omitted)).[9]  In determining whether a belief is "sincere" "an individual

---

[9] The Second Circuit recently explained that "[i]t has not been decided in this Circuit whether, to state a claim under the First Amendment's Free Exercise Clause, a prisoner must show at the threshold that the disputed conduct substantially burdens his [or her] sincerely held religious beliefs."  *Holland v. Goord*, 758 F.3d 215, 220 (2d Cir. 2014).  The Second Circuit chose not to confront this question—or rather, not to alter the previous assumption that the substantial burden test is a threshold question.  *Id.* at 220.  Accordingly, this Court "will follow the analysis in *Holland* and proceed to consider the First Amendment analysis, assuming that the substantial burden test is still valid."  *Weathers*, 2014 WL 4810309, at *4; *see also Williams v. Fisher*, No. 11-CV-379, 2015 WL 1137644, at *16 (N.D.N.Y. Mar. 11, 2015) (same).

. . . need only demonstrate that the beliefs professed are sincerely held and in the individual's own scheme of things, religious." *Ford*, 352 F.3d at 588 (citations, alterations, and internal quotation marks omitted).  Moreover, "[a] substantial burden on religious exercise exists where the state puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Rossi*, 2015 WL 769551, at *7 (internal citations and quotation marks omitted).  The Second Circuit has further specified that "[t]he relevant question in determining whether [the plaintiff's] religious beliefs were substantially burdened is whether participation in the [religious activity], in particular, is considered central or important to [the plaintiff's religious] practice . . ." *Ford*, 352 F. 3d at 593–94.  "Once [a] plaintiff establishes this burden, '[t]he defendants then bear the relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct.'" *Smith v. Perlman*, No. 11-CV-20, 2012 WL 929848, at *7 (N.D.N.Y. Mar. 19, 2012) (quoting *Salahuddin*, 467 F.3d at 308)).  The burden then shifts to the inmate "to show that these articulated concerns were irrational." *Salahuddin*, 467 F.3d at 308.

RLUIPA, in turn, "protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion," *Cutter v. Wilkinson*, 544 U.S. 709, 723 (2005), and "provides a more stringent standard than does the First Amendment, barring the government from imposing a substantial burden on a prisoner's free exercise unless the challenged conduct or regulation furthers a compelling governmental interest and is the least restrictive means of furthering that interest," *Holland v. Goord*, 758 F.3d 215, 224 (2d Cir. 2014) (alterations and internal quotation marks omitted); *see also Salahuddin*, 467 F.3d at 273 ("RLUIPA protects inmates by providing that a government shall not 'impose a substantial burden' on the 'religious

exercise' of inmates in certain institutions unless the government shows that the burden furthers a compelling governmental interest by the least restrictive means.'" (quoting 42 U.S.C. § 2000cc-1(a)) (footnote omitted)).  While "RLUIPA does not define 'substantial burden,' . . . the Second Circuit has assumed that '[s]ince substantial burden is a term of art in the Supreme Court's free exercise jurisprudence we assume that Congress, by using it, planned to incorporate the cluster of ideas associated with the Court's use of it.'"  *Panayoty v. Annucci*, 898 F. Supp. 2d 469, 481–82 (N.D.N.Y. 2012) (quoting *Westchester Day Sch. v. Village. of Mamaroneck*, 504 F.3d 338, 348 (2d Cir. 2007)).  "The Supreme Court has held that a substantial burden is one that 'put[s] substantial pressure on an adherent to modify his behavior and to violate his [or her] beliefs.'"  *Id.* at 482 (quoting *Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 718 (1981)).  Whether or not a prisoner sufficiently pleads a substantial burden on a sincerely held religious belief under RLUIPA involves the same threshold analysis as under the First Amendment.  *See Valdez v. City of New York*, No. 11-CV-5194, 2013 WL 8642169, at *12 (S.D.N.Y. Sept. 3, 2013) ("To state a claim under both the Free Exercise Clause of the First Amendment and RLUIPA, an inmate must first allege that the government imposed a 'substantial burden' on his religious exercise." (citing *Salahuddin*, 467 F.3d at 274–75)), *report and recommendation adopted by* 2014 WL 2767201 (S.D.N.Y. June 17, 2014); *Ramsey v. Goord*, 661 F. Supp. 2d 370, 395 n.12 (W.D.N.Y. 2009) (explaining that "the threshold inquiry of a religious freedom claim under both the First Amendment and the RLUIPA is the same"); *Pugh v. Goord*, 571 F. Supp. 2d 477, 504 (S.D.N.Y. 2008) (engaging in the same analysis for determining a plaintiff's sincerely held beliefs under both the RLUIPA and the Free Exercise Clause).  "Where a plaintiff adduces evidence sufficient to show that the government practice substantially burdens [his or] her religious exercise, the onus shifts to the government to

demonstrate that the practice furthers a compelling governmental interest, and that the burden

imposed on religion is the least restrictive means of achieving that interest." *Jova v. Smith*, 582

F.3d 410, 415 (2d Cir. 2009) (citing 42 U.S.C. § 2000cc-2(b)).

<u>b. Application</u>

Although Plaintiff does not plead that she practices any specific religion, Defendants do

not contest the sincerity of Plaintiff's religious beliefs.  The Court, therefore, will assume for the

purpose of resolving the instant Motion that Plaintiff's religious beliefs are sincerely held.

The Court turns, then, to whether Plaintiff has adequately alleged that her ability to

exercise her religious beliefs was substantially burdened.  In the Second Circuit, courts have held

that preclusion from attending two religious services is not, without more, a "substantial burden"

on a plaintiff's free exercise of religion.  *See Jean-Laurent v. Los*, No. 12-CV-132, 2015 WL

1015383, at *6 (W.D.N.Y. Mar. 8, 2015) (explaining that "[c]ourts within the Second Circuit

have consistently held that missing two religious services does not pose a substantial burden on

an inmate's religion" and collecting cases); *Blalock v. Jacobsen*, No. 13-CV-8332, 2014 WL

5324326, at *7 (S.D.N.Y. Oct. 2, 2014) (same); *Shapiro*, 2014 WL 1276479, at *11 ("[N]ot

permitting a prisoner to attend two religious services 'is a de minimis, or insubstantial, burden on

an inmate's ability to freely exercise his religion.'" (quoting *Smith v. Graziano*, No. 08-CV-469,

2010 WL 1330019, at *9 (N.D.N.Y. Mar. 2010), *report and recommendation adopted by* 2010

WL 1332503 (N.D.N.Y. Apr. 6, 2010)).  Here, Plaintiff only claims that she missed two religious

services on February 9, 2014 and February 16, 2014, (*see* Am. Compl. ¶ II.D), and Plaintiff does

not allege that the specific services were "'central or important' to [her] faith," *Rossi*, 2015 WL

769551, at *8 (quoting *Ford*, 352 F.3d at 593–94) *cf. Harnett v. Barr*, 538 F. Supp. 2d 511, 521

(N.D.N.Y. 2008) (denying the defendant's motion to dismiss where the plaintiff alleged that he

was denied, among other things, one Ramadan meal).[10]   Accordingly, the Court grants

Defendants' Motion to Dismiss Plaintiff's First Amendment claim on the grounds that Plaintiff

has failed to "make a threshold showing that the disputed conduct substantially burdened [her]

sincerely held religious beliefs."  *Washington*, 2015 WL 1439348, at *9 (internal quotation

marks omitted).  *See Blalock*, 2014 WL 5324326, at *7 (granting the defendant's motion to

dismiss because prohibition from attending two religious services is not a substantial burden on

the plaintiff's free exercise rights); *Shapiro*, 2014 WL 1276479, at *11 (granting the defendant's

motion to dismiss where the plaintiff only alleged the denial of two religious services); *cf. JCG v.

Ercole*, No. 11-CV-6844, 2014 WL 1630815, at *23 (S.D.N.Y. Apr. 24, 2014) (denying the

defendant's motion to dismiss when the plaintiff claimed that the defendant denied him the right

to attend religious services and celebrate religious holidays for his entire stay noting that "this is

sufficient, *albeit barely*, at the pleading stage to allege a substantial burden on [the plaintiff's]

beliefs in that he was completely denied any occasion to worship or practice his religion,

particularly given that [the] [d]efendants offer no legitimate penological objective that might

justify such a denial" (emphasis added)), *report and recommendation adopted by* 2014 WL

2769120 (S.D.N.Y. June 18, 2014); *Smith*, 2012 WL 929848, at *7 (denying the defendants'

motion to dismiss because "[a]t [the motion to dismiss] stage, the [c]ourt [found] that [the]

plaintiff ha[d] alleged sufficient facts to establish that missing three consecutive Jum'ah services

while housed in keeplock substantially burden[ed] his religion").  This claim is dismissed

without prejudice so that Plaintiff may have an opportunity to allege additional facts or otherwise

explain why missing the two services placed a substantial burden on her religious beliefs.

---

[10] Indeed, it is worth noting that Plaintiff alleges she was denied the opportunity to attend
services for two different religious denominations.

To the extent that Plaintiff raises a RLIUPA claim, this claim also fails.  "RLUIPA does not offer monetary damages against state officers in either their official or individual capacities." *Holland*, 758 F.3d at 224 (citing *Washington v. Gonyea*, 731 F.3d 143, 145–46 (2d Cir. 2013) (per curiam)); *see also Keitt v. Hawk*, No. 13-CV-850, 2015 WL 1246058, at *11 (N.D.N.Y. Jan. 8, 2015) (same).  Instead, a plaintiff may only seek injunctive relief.  *Holland*, 758 F.3d at 224; *see also Fortress Bible Church v. Feiner*, 734 F. Supp. 2d 409, 520 (S.D.N.Y. 2010) ("It is readily apparent that injunctive relief constitutes appropriate relief under RLUIPA." (internal citations and quotation marks omitted)).  Here, Plaintiff requests one million dollars in monetary damages, (Am. Compl. ¶ V.), which is an unavailable remedy against a state actor in his official or individual capacity under RLUIPA.  *See Holland*, 758 F.3d at 224.  Further, because Plaintiff is no longer incarcerated, to the extent Plaintiff requests any injunctive relief, this request is moot.  *See Pugh*, 571 F. Supp. 2d at 498–490 (explaining that "[w]here a prisoner has been released from prison, his [or her] claims for injunctive relief based on the conditions of his [or her] incarceration must be dismissed as moot," citing cases, and dismissing a former inmate's RLUIPA claims as moot); *see also Martin-Trigona v. Shiff*, 702 F.2d 380, 386 (2d Cir. 1983) ("The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed."); *Casey v. Pallito*, No. 12-CV-284, 2013 WL 6673623, at *19 (D. Vt. Dec. 18, 2013) ("[Plaintiff's] claim for [monetary] damages is not cognizable under RLUIPA, and his claim for injunctive relief is rendered moot by his transfer away from the facility where the events giving rise to his claim took place"), *report and recommendation adopted in relevant part by* 2013 WL 682800 (D. Vt. Feb. 25, 2013).  Defendants' Motion, therefore, is granted as to Plaintiff's claims under the First Amendment and RLUIPA.

### 2.  Harassment

#### a.  Applicable Law

"It is well established in the Second Circuit that verbal harassment of inmates by prison officials, unaccompanied by any injury—no matter how inappropriate, unprofessional, or reprehensible it might seem—does not rise to the level of a violation of the Eighth Amendment." *Cusamano v. Sobek*, 604 F. Supp. 2d 416, 459 (N.D.N.Y. 2009); *see also Little v. Municipal Corp.*, 51 F. Supp.3d 473, 500 (S.D.N.Y. 2014) ("'[V]erbal harassment or profanity alone, unaccompanied by any injury, no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983.'" (quoting *Hare v. Hayden*, No. 09-CV-3135, 2011 WL 1453789, at *7 (S.D.N.Y. Apr. 14, 2011)) (alteration and internal quotation marks omitted)).  In other words, "allegations of verbal harassment or threats are generally an insufficient basis for an inmate's § 1983 claim." *Rosales v. Kikendall*, 677 F. Supp. 2d 643, 648 (W.D.N.Y. 2010) (citing *Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986)).  In general, the alleged injury must be physical in nature, although, "under certain circumstances, a prison official's infliction of psychological pain on an inmate may constitute an Eighth Amendment violation . . . [if the] psychological pain [is] (1) intentionally inflicted and (2) more than de minimis in nature." *Cusamano*, 604 F. Supp. 2d at 490–91.

#### b.  Application

Plaintiff alleges that Cipolini's conduct constituted harassment.  (Pl.'s Sept. 17, 2014 Letter, at unnumbered 2.)  Plaintiff does not claim that Cipolini caused her any physical injury. Although Plaintiff states that Defendants "publicly humiliated [her]" and "caused [her] mental anguish," (Pl.'s Am. Compl. ¶ V), Plaintiff has not sufficiently alleged that her humiliation or

mental anguish rose to the level of psychological pain that was more than de minimis in nature. *See Cusamano*, 604 F. Supp. 2d at 491.  To begin, it is far from clear that Cipolini's statements regarding Plaintiff's hair and sexuality could be construed as verbal harassment.  *See Jordan v. Fischer*, 773 F. Supp. 2d 255, 276 n.25 (N.D.N.Y. 2011) (noting that although the plaintiff claimed that an officer used "sexual slurs" about the plaintiff, the court did not find that "such comments, while they may have been inappropriate, would even come close to 'verbal harassment'").  Indeed, Defendants move to dismiss any claim of verbal harassment as to Burguess, not as to Cipolini.  (*See* Defs.' Mem. 10–11.)  In an abundance of caution, however, the Court will construe Plaintiff's allegations against Cipolini as alleging a claim for verbal harassment as well.  In any event, while any verbal harassment based on an individual's sexuality or gender is unacceptable, Plaintiff's allegations as to Cipolini, without more, do not rise to the level of a constitutional violation under the Eighth Amendment.  *See Vega v. Artus*, 610 F. Supp. 2d 185, 209 (N.D.N.Y. 2009) (dismissing the plaintiff's claim based on the allegations that the defendants "made harassing comments against him because they believed that he was [a] homosexual" because "allegations of verbal harassment are insufficient to support a constitutional violation"); *cf. Abney v. Jopp*, 655 F. Supp. 2d 231, 234 (W.D.N.Y. 2009) (explaining that the plaintiff's allegations that the defendant officer called the plaintiff a "'pussy' and accused him of being afraid of 'little women'" did not give rise to a constitutional claim).  Any claim under the Eighth Amendment, therefore, fails and is accordingly dismissed.

### 3.  Equal Protection Claim

#### a.  Applicable Law

"The Equal Protection Clause of the Fourteenth Amendment requires that all persons similarly situated be treated in the same manner."  *Allen v. Cuomo*, 100 F.3d 253, 260 (2d Cir.

1996) (internal citations and quotation marks omitted).  In other words, "the Equal Protection

Clause bars the government from selective adverse treatment of individuals compared with other

similarly situated individuals if such selective treatment was based on impermissible

considerations such as race, religion, intent to inhibit or punish the exercise of constitutional

rights, or malicious bad faith intent to injure a person." *Bizzaro v. Miranda*, 394 F.3d 82, 86 (2d

Cir. 2005) (internal quotation marks omitted); *see also Bailey v. Town of Evans*, 443 F. Supp. 2d

427, 430 (W.D.N.Y. 2006) (same).  To state a violation of the Equal Protection Clause, a

plaintiff must allege "that he [or she] was treated differently than others similarly situated as a

result of intentional or purposeful discrimination."  *Phillips v. Girdich*, 408 F.3d 124, 129 (2d

Cir. 2005); *see also Barrow v. Buren*, No. 12-CV-1268, 2015 WL 417084, at *22 (N.D.N.Y. Jan.

30, 2015) (same); *Nash v. McGinnis*, 585 F. Supp. 2d 455, 462 (W.D.N.Y. 2008) ("In order to

plead a facially valid equal protection claim . . . [a] plaintiff must allege: (1) that he [or she] has

been treated differently from similarly-situated inmates, and (2) that the discrimination is based

upon a constitutionally impermissible basis, such as race.").[11]

---

[11] In the prison context, the Second Circuit has also held that in addition to alleging that
he or she was treated differently than others similarly situated as a result of discrimination, a
prisoner must also allege that the "disparity in treatment cannot survive the appropriate level of
scrutiny which, in the prison setting, means that he [or she] must demonstrate that his [or her]
treatment was not 'reasonably related to any legitimate penological interests.'"  *Phillips*, 408
F.3d at 129 (quoting *Shaw v. Murphy*, 532 U.S. 223, 225 (2001)); *see also Pugh*, 571 F. Supp. 2d
at 502 (explaining that "even if [a] plaintiff can demonstrate that two groups are similarly
situated, disparate treatment may still be warranted if the government can demonstrate that the
distinctions are 'reasonably related to legitimate penological interests'" (quoting *Benjamin v.
Coughlin*, 905 F.2d 571, 575 (2d Cir. 1990)); *Vega v. Lantz*, No. 04-CV-1215, 2009 WL
3157586, at *8 (D. Conn. Sept. 25, 2009) (same).  Nevertheless, some classifications in the
prison setting "raise special fears that they are motivated by an invidious purpose," and,
therefore, at the very least "[t]he right not to be discriminated against based on one's race is not
susceptible to the [requirement that a prisoner must demonstrate that his or her treatment was not
reasonably related to any legitimate penological interest]."  *Johnson v. California*, 543 U.S. 499,
505 (2005); *see also Barnes v. Ross*, 926 F. Supp. 2d 499, 506 (S.D.N.Y. 2013) (same); *cf. Wolff
v. McDonnell*, 418 U.S. 539, 556 (1974) ("Prisoners are protected under the Equal Protection

b.  Application

Plaintiff sufficiently alleges a claim of discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment.  Plaintiff claims that Cipolini prevented her from attending the two religious services "because of [her] hair" and because of "her sexuality."  (Am. Compl. ¶ II.D; Pl.'s Sept. 17, 2014 Letter, at unnumbered 2.)  The Court concludes that Plaintiff has sufficiently alleged that she was treated differently than others similarly situated.  Plaintiff claims that the incident on February 9, 2014 occurred "in[]front of the inmates going to religious services," (Pl.'s Sept. 17, 2014 Letter, at unnumbered 2), and, therefore, the Court reasonably infers that these inmates attended services on this day, whereas Plaintiff did not.  Although Plaintiff's Amended Complaint lacks any other allegations that the prisoners who attended religious services were similarly situated to Plaintiff, the Amended Complaint as a whole suggests that while Plaintiff was prevented from attending religious service because of her hair and sexuality, the other prisoners in the male facility were not.  As such, Plaintiff sufficiently pleads that she was treated differently to others similarly situated.  *See Richard v. Fischer*, 38 F. Supp.3d 340, 355 (W.D.N.Y. 2014) (finding that the plaintiff's "allegation that he was discriminated against because of his race and religion, coupled with the allegation that others were not subject to the discriminatory employment policy, carrie[d] with it the presumption that similarly-situated inmates were not mixed-race Muslims"); *cf. Vaher v. Town of Orangetown*,

---

Clause of the Fourteenth Amendment from invidious discrimination based on race.")  Because there is no obvious legitimate penological interest for Plaintiff's exclusion from religious services based on her hair and sexuality from the face of the Amended Complaint, the Court need not decide at this stage whether any classifications based on Plaintiff's identity as a transgender individual or on Plaintiff's gender or sexual orientation "raise special fears that they are motivated by an invidious purpose," such that "[t]he right not to be discriminated against based on [these factors] is not susceptible to the [requirement that a prisoner must demonstrate that his or her treatment was not reasonably related to any legitimate penological interest]." *Johnson*, 543 U.S. at 510.

916 F. Supp. 2d 404, 434 (S.D.N.Y. 2013) (dismissing the plaintiff's Equal Protection claim where the amended complaint was "completely devoid of any reference to 'similarly situated' or 'substantially similar' individuals").

      Second, Plaintiff sufficiently pleads that Cipolini intentionally discriminated against her. At the motion to dismiss stage, viewing the evidence in the light most favorable to Plaintiff, Plaintiff satisfies this requirement by stating that she was prohibited from attending religious services "*because of* [her] hair and [her] sexuality." (Pl.'s Sept. 17, 2014 Letter, at unnumbered 2 (emphasis added); *see also* Am. Compl. ¶ II.D.) Assuming, as the Court must at this stage, that Cipolini prohibited Plaintiff, but not others, from attending services because of Plaintiff's sexuality, these facts sufficiently state a plausible claim to relief, especially in light of the fact that the Court is unable to conceive of any legitimate penological interest that would be served by denying Plaintiff the right to attend religious services based on her hair and/or sexuality. *See Rosado v. Herard*, No. 12-CV-8943, 2014 WL 1303513, at *8 (S.D.N.Y. Mar. 25, 2014) (explaining that because there was "no obvious or administrative reason" for excluding "Spanish speaking inmates" from attending group sessions "discriminatory intent—at least at the pleading stage—can be inferred"); *Phillips*, 408 F.3d at 130 (holding that plaintiff's allegations of racial discrimination sufficed to state an Equal Protection violation where the Court could not "imagine a legitimate penological reason for the conduct alleged"); *Bussey v. Phillips*, 419 F. Supp. 2d 569, 584 (S.D.N.Y. 2006) (finding that where the plaintiff alleged he was subject to different punishment for the same act as white inmates, plaintiff sufficiently plead discriminatory intent to survive summary judgment); *cf. Benjamin v. Coughlin*, 905 F.2d 571, 579 (2d Cir. 1990) (holding that "the unlimited right granted to Jewish and Muslim inmates, as opposed to Rastafarian prisoners, to wear religious headgear [does not] establish[] an equal protection

violation" because of the differences in the security concerns that the type of headgear pose);

*Kole v. Lappin*, 551 F. Supp. 2d 149, 156 (D. Conn. 2008) (finding that because "the government

offered two penological interests" supporting why certain holiday food was offered for some

religious holidays but not all, the plaintiff's Equal Protection claim failed). Accordingly, Plaintiff

has adequately alleged an Equal Protection claim, and Defendants' Motion to Dismiss this claim

as to Cipolini is denied.

### III. Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss is granted in part and denied in

part.  In particular, Defendants' Motion is granted as to the claims against Burguess, without

prejudice to Plaintiff's re-filing another Action based on the fact that she has now exhausted her

administrative remedies as to these claims.  With respect to the claims against Cipolini,

Defendants' Motion is granted as to the First Amendment, RLUIPA, and Eighth Amendment

claims and denied as to Plaintiff's Equal Protection claim.  The Clerk of the Court is respectfully

requested to terminate Defendants' Motion to Dismiss, (Dkt. No. 38), and Plaintiff's Motion for

an Order of compensation, (Dkt. No. 32).  Plaintiff may file a Second Amended Complaint

within thirty days of this Opinion and Order.  Moreover, in light of the fact that Plaintiff has

failed to respond to Defendants' Motion to Dismiss and failed to appear at the last several

conferences in this Action, Plaintiff is ordered to notify the Court of her intention to pursue this

Action and/or re-institute another action against Burguess within 30 days or risk dismissal of her

case for failure to prosecute.

SO ORDERED.

Dated: September 30 , 2015
          White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE